IN THE UNITED SATE DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

S.M.,

    Plaintiff,

v.                                              Case No. 16-cv-823 SCY/WPL

Bloomfield School District,
*et al.*,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment against Defendant Benjamin Griffith. Doc. 21. In the Motion, Plaintiff contends that summary judgment should be entered against Defendant Griffith on Plaintiff's first and second causes of action arising under the Fourteenth Amendment. *Doc. 20*. Having reviewed the briefing and considered the relevant law, the Court will **GRANT** Plaintiff's Motion.

    I.    **BACKGROUND**

The facts leading to up to the alleged encounter between Defendant Griffith and Plaintiff are largely undisputed. At the time of the incident, Defendant Griffith was a teacher at Bloomfield High School. *Plaintiff's First Amended Complaint*, Doc. 8 at ¶ 4; *Defendant Griffith's Answer*, Doc. 17 at ¶ 4. Plaintiff was a student at Bloomfield High School and was working on a computer in Defendant Griffith's classroom. Doc. 8 at ¶¶ 1, 164; Doc. 17 at ¶¶ 1, 164. At some point during class, Plaintiff connected a cell phone to the computer and began listening to music. Doc. 8 at ¶ 166; Doc. 37 at 3. The cell phone displayed an image of a woman which Defendant Griffith observed. Doc. 8 at ¶ 166; Doc. 37 at 3-4. Defendant Griffith approached Plaintiff and questioned her regarding the image. Doc. 8 at ¶ 166, Doc. 37 at 3-4.

1

Plaintiff alleges that the image contained a picture of a woman in her bra and panties. Doc. 8 at ¶ 166. She alleges that when Defendant Griffith observed the image he accused her of looking at "girl porn." Doc. 8 at ¶ 167. It is undisputed that Defendant Griffith then removed one of Plaintiff's earbuds, placed it in his ear, and began to dance. Doc. 8 at ¶ 170; Doc. 37 at 4. The parties dispute the manner, however, in which Defendant Griffith returned the ear bud once he was done listening to the music. Plaintiff alleges that Defendant Griffith purposefully dropped the earbud down her shirt. Doc. 21 at 5. Defendant Griffith contends that he did not intentionally drop the earbud down Plaintiff's shirt but admits that is where it landed. Doc. 37 at 4. After returning the earbud, Defendant Griffith insisted on looking at Plaintiff's phone. Doc. 21 at 5; Doc. 37 at 4.

The parties largely dispute what occurred next. Plaintiff alleges that she repeatedly refused to give Defendant Griffith her phone. Doc. 21 at 5. Plaintiff alleges that Defendant Griffith then reached for the phone, latched his finger onto Plaintiff's shirt, and pulled her shirt down while brushing his hand across her breasts. Doc. 21 at 5. Plaintiff alleges that Defendant Griffith then momentarily left but returned and pinched her below her ribs on her left side. Doc. 21 at 5. Plaintiff alleges that she pulled away from Defendant Griffith which caused him to aggressively touch her body and breasts with his hands. Doc. 21 at 5. Plaintiff alleges that Defendant continued to touch her despite her objections while asking if she was ticklish. Doc. 21 at 5. Plaintiff further alleges that at some point Defendant Griffith placed the corner of a manila envelope down the front of Plaintiff's shirt and began questioning her regarding the color and design of her bra. Doc. 21 at 5. Plaintiff alleges that she repeatedly objected to showing Defendant Griffith her bra. Doc. 21 at 5-6. In response, Plaintiff alleges that Defendant Griffith removed Plaintiff's hands from her keyboard and typed the word "asshole" on the screen. Doc.

21 at 6. Plaintiff alleges that Defendant Griffith then began grabbing at Plaintiff's body again and threatened to pinch her breasts. Doc. 21 at 6. Plaintiff alleges that as she tried to leave the classroom, Defendant Griffith approached her with her back to a wall and asked why she was leaving. Doc. 21 at 6.

Defendant Griffith, on the other hand, disputes that he intentionally grabbed Plaintiff's breast when he reached for her phone. Doc. 37 at 5. Defendant Griffith contends that he instead "*inadvertently* brushed one of [Plaintiff's] breasts with the back of his hand." Doc. 37 at 5 (emphasis added). Defendant Griffith likewise generally denies Plaintiff's remaining allegations of additional contact. Furthermore, Defendant Griffith disputes that his guilty plea was "for having touched Plaintiff's breasts for his own sexual gratification" and that the plea automatically serves as an admission of the "myriad of [Plaintiff's] 'undisputed' facts concerning the alleged incident." Doc 37 at 7. In sum, while Defendant Griffith largely disputes Plaintiff's version of events, Defendant Griffith concedes that he reached for Plaintiff's phone but missed and in so doing inadvertently touched Plaintiff's breast. Doc. 37 at 5.

Subsequent to the encounter, Defendant Griffith was arrested and ultimately pled guilty to criminal sexual contact of a minor pursuant to NMSA 1978, § 30-9-13(D)(2), which covers situations in which a school employee molests a student. Defendant Griffith was sentenced to eighteen months imprisonment and is required to register as a sex offender.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's

case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). All material facts set forth in the motion and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but to whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550–55 (1999). Third, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257.

## III. ANALYSIS

As noted above, the parties largely dispute the material facts underlying the encounter between Defendant Griffith and Plaintiff. Generally, where there are disputed issues of material fact, the Court must deny summary judgment. Fed.R.Civ.P. 56(a). Plaintiff contends, however, that, due to his guilty plea, Defendant Griffith should be either judicially estopped or collaterally estopped from disputing the underlying facts of the encounter. Accordingly, before reaching the merits of Plaintiff's Motion, the Court will determine whether Defendant Griffith should be estopped from denying Plaintiff's allegations. The Court concludes that judicial estoppel does apply to preclude Defendant from asserting that his touching of Plaintiff's breast was unintentional. Because the doctrine of collateral estoppel, if it applied, would not have any greater preclusive effect, the Court need not address the issue of collateral estoppel. Having determined that judicial estoppel applies, the Court next concludes that Defendant Griffith's intentional touching of Plaintiff's breast for his sexual gratification requires the entry of summary judgment in connection with Plaintiff's Due Process and Equal Protection claims.

### A. Judicial Estoppel

Judicial estoppel "is a broad, discretionary remedy which courts may invoke to protect the integrity of the judicial process." *Spurlock v. Townes*, Civ. No. 09-00786, Doc. 76 at 8 (D.N.M. May 26, 2010). While this doctrine is "probably not reducible to any general formulation," the gist of judicial estoppel holds that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (citing *Davis v. Wakelee*, 156 U.S. 680, 689

(1895)). Courts routinely analyze several factors in determining when judicial estoppel applies. "First, a party's later position must be clearly inconsistent with its earlier position." *Johnson*, 405 F.3d at 1069 (internal quotation marks and citation omitted). "Second, whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (internal quotation marks and citation omitted). "Third, whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (internal quotation marks and citation omitted).

Courts may utilize judicial estoppel to preclude a party in a civil trial from contesting facts admitted to as part of an earlier criminal plea agreement. In *Johnson*, for instance, the Tenth Circuit, relying on the doctrine of judicial estoppel, held that the plaintiffs could not contest the facts underlying their arrest in a subsequent civil suit for unlawful arrest and imprisonment. *Id.* at 1069. As part of a plea agreement, the plaintiffs admitted that they "attempted to use unlawful force or violence to do bodily injury to another person" and were guilty of assault. *Id.* at 1069. In so doing, the plaintiffs admitted that there was probable cause for their arrest. *Id.* The Court stated that "[b]ecause [p]laintiffs have convinced a Utah court that they attempted to do bodily harm to [victim] and accepted responsibility for that action, and now attempt to refute and negate that admission in federal court, the clear perception, if we were to accept their present contention, would be that either the Utah court or this court had been misled." *Id.* Accordingly, the Court concluded that "to allow [p]laintiffs to accept the benefit of the [guilty pleas] and, in the next breath, sue for civil damages stemming from their arrest for crimes they admittedly committed would clearly undermine the integrity of the judicial system." *Id.*

Similarly, in *Spurlock*, the court estopped the defendant from contesting facts in a civil suit that he admitted to as part a plea deal in an underlying criminal case against him. *Spurlock*, Civ. No. 09-00786, Doc. 76 at 9 (D.N.M. May 26, 2010). The defendant, a former correctional officer, was charged with sexually assaulting multiple inmates and ultimately pled guilty to four counts of criminal sexual penetration by one in a position of authority and four counts of false imprisonment. *Id.* at 2. The inmates subsequently brought suit against the defendant for violating their rights under the Eighth Amendment to be free of excessive force and their rights under the Thirteenth Amendment to be free of slavery. *Id*. While the court in *Spurlock* did not clarify the full extent of the defendant's admission of facts, it is clear from the opinion that, at the least, the defendant was estopped from denying that he restrained and sexually assaulted the inmates. Relying on *Johnson*, the *Spurlock* court concluded that to allow the defendant to contest those facts in the civil proceeding would be to allow him to adopt an inconsistent position. *Id.* at 9. Further, the court concluded that if the defendant were to be allowed to take such an inconsistent position and ultimately prevail in the civil suit, "it would certainly create the perception that one court or the other was misled." *Id.* at 9. Finally, the court concluded that it would give the defendant an "unfair advantage to permit him to dispute the underlying facts now, merely because it is advantageous for him to do so. *Id.* at 10.

The *Spurlock* court, however, limited application of judicial estoppel to what defendant specifically admitted in connection with his guilty plea. *Id.* at 10. Because the plaintiffs did not provide an entire transcript, the court declined to definitely state the full set of facts the defendant was estopped from contesting. Nevertheless, the court went on to address the substance of the plaintiffs' claims by relying on the elements of the offenses to which the

7

defendant pled guilty. *Id.* at 12. This Court will follow the well-reasoned course set forth in *Spurlock*, which begins with a review of the elements of the offense at issue.

Defendant pled guilty to criminal sexual contact of a minor in the fourth degree contrary to NMSA 1978, Section 30-9-13(D)(2). Under Section 30-9-13(A), "criminal sexual contact of a minor" is defined as "the unlawful and intentional touching of or applying force to the intimate parts of a minor[.]" "Intimate parts" are defined as "the primary genital area, groin, buttocks, anus, or breasts." *Id.* In relevant part, the statute provides that Section 30-9-13(D)(2) "consists of all criminal sexual contact [] of a minor perpetrated on a child thirteen to eighteen years of age when the perpetrator, who is a licensed school employee…[and] who is at least eighteen years of age and is at least four years older than the child and not the spouse of that child, learns while performing services in or for a school that the child is a student in a school." The New Mexico Supreme Court has explained that under the Section 30-9-13, an "unlawful" touching is one in which the defendant acted in a manner "calculated to arouse or gratify sexual desire, or which otherwise intruded upon the child's bodily integrity or personal safety." *State v. Osborne*, 1991-NMSC-032, ¶ 30, 808 P.2d 624. *See also Hellums v. Williams*, 16 Fed App'x 905, 911 (10th Cir. 2001) (unpublished) ("Unlawful touching [under Section 30-9-13] occurs when the touching is done to arose or gratify sexual desire or to otherwise intrude upon the bodily integrity of a minor.").

Despite pleading guilty to a felony offense which, as an element, requires intentional touching, Defendant now asserts that his touching was inadvertent. Defendant's uphill battle is made all the more difficult by evidence that when asked during his change of plea proceeding if he touched Plaintiff for "self-gratification", he responded "Yes." Doc. 21-2 at 2. Although it is

possible for an inadvertent touch to lead to sexual gratification, a touch done *for* sexual gratification is not inadvertent.

Faced with these facts, Defendant argues that Plaintiff's statement (made prior to Defendant's guilty plea) that she was unsure whether Defendant Griffith's touch was intentional creates a factual dispute regarding the purposefulness of the touching. The Court disagrees. The person who knows best why he touched Plaintiff is Defendant and Defendant, in a court proceeding, admitted he touched Plaintiff for sexual gratification. Plaintiff, on the other hand, had no direct knowledge of Defendant's purpose; her acknowledgement of such does not create a factual dispute.

Looking at factors relevant to determining whether judicial estoppel applies, the Court first concludes that Defendant's current position that the touching was unintentional is inconsistent with the earlier position he took in his criminal case. Consideration of the elements of the crime to which Defendant pled guilty and of evidence obtained from his guilty plea establish that the touching of Plaintiff's breast, which both parties agree occurred, was intentional rather than inadvertent. Given Section 30-9-13, the Court finds that Defendant Griffith pled guilty to the "unlawful and intentional touching or applying force to" Plaintiff's breasts. In so doing, he further admitted to having touched Plaintiff's breast in a manner "calculated to arouse or gratify sexual desire or otherwise intrude upon [Plaintiff's] bodily integrity or personal safety." *See Osborne*, 1991-NMSC-032, ¶ 30. These admissions are inconsistent with Defendant's current position that the touching was inadvertent.

Second, if Defendant Griffith were permitted to contest Plaintiff's allegations that he intentionally touched her breasts, such contention would create the perception that either this Court or the court that accepted his guilty plea was misled. If Defendant did not intentionally

9

touch Plaintiff, he is not guilty of the crime to which admitted being guilty. If Defendant truly did not intentionally touch Plaintiff's breast, the court that adjudged him guilty was misled by Defendant. On the other hand, if Defendant maintains that his guilty plea is valid, it is misleading for him to argue before this Court that he did not actually engage in conduct that satisfies the elements of that criminal charge.

The third factor, "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped", does not neatly fit situations such as this where the first judicial proceeding involved a criminal case. Having been a victim, but not a party, to that earlier proceeding, it would be difficult for Plaintiff to establish that failure to apply judicial estoppel would give Defendant an unfair advantage in the current proceeding. Plaintiff does not allege that she detrimentally relied on Defendant's statement from that proceeding or, for some other reason, would be worse off if Defendant had never pleaded guilty. Nonetheless, as the court in *Johnson* stated before setting forth the above factors, judicial estoppel is "probably not reducible to any general formulation." *Johnson,* 405 F.3d at 1069. Thus, rather than strictly applying this third factor, the Court looks to the purpose behind it. This factor involves fairness and equity as well as considerations of advantage and detriment. Judicial estoppel is an equitable doctrine and it would not be equitable to allow a defendant to assert facts before one court to promote his self-interests (obtaining the benefits of a plea agreement) in the action before that court and then assert a completely contradictory set of facts to promote different self-interests (avoiding civil liability) in an action before a different court. *See id*. ("to allow [p]laintiffs to accept the benefit of the [guilty pleas] and, in the next breath, sue for civil damages stemming from their arrest for crimes they admittedly committed would clearly undermine the integrity of the judicial system."). Thus, to

the extent that Defendant Griffith is now attempting to characterize his touching of Plaintiff as "inadvertent" or not for sexual gratification, the Court concludes that Defendant Griffith should be judicially estopped from taking such a position.

That said, the Court agrees with Defendant Griffith that his plea does not act as an admission to the "myriad" of Plaintiff's proffered undisputed material facts. This includes Plaintiff's allegations that Defendant Griffith repeatedly touched her breasts during the encounter as well as the facts surrounding the encounter, as the Court has no indication that admissions to these allegations were part of Defendant Griffith's guilty plea. Accordingly, in analyzing whether Defendant Griffith's conduct violated the Fourteenth Amendment as a matter of law, the Court only considers it undisputed that when Defendant Griffith reached for Plaintiff's phone, he intentionally and unlawfully touched or applied force to Plaintiff's breast for the purpose of gratifying his own sexual desire.

With regard to information Plaintiff failed to include with her motion for summary judgment, the Court will continue to follow *Spurlock*'s lead. There, the plaintiffs did not attach as an exhibit the entire transcript of the plea hearing. *Spurlock*, Civ. No. 09-00786, Doc. 76 at 10. As a result, the court ordered the plaintiffs to file an official copy of the entire transcript of the plea and indicated that if there existed discrepancies between the court's decision and the contents of the transcript, the defendant was permitted to file a motion to reconsider the court's order. *Id.* at 11. The Court finds this procedure proper and will likewise order Plaintiff to file either an official transcript or the actual audio recording of Defendant Griffith's plea with the Court within two weeks from the entry of this Opinion. If a discrepancy exists between the Court's decision and the actual record of the hearing, Defendant may file a motion to reconsider within two weeks after receiving such record.

## B. Plaintiff's Due Process Claim

With the undisputed material facts in mind, the Court turns to Plaintiff's claim under 42 U.S.C. § 1983 that Defendant Griffith's conduct violated her constitutional right to bodily integrity as a matter of law. To prove a § 1983 claim, Plaintiff must show (1) that a violation of rights secured by the Constitution or laws of the United States; and (2) the alleged deprivation was committed by a person acting under color of law. *Chavez v. Bd. of Cnty Comm'rs of Sierra Cnty*, 899 F.Supp.2d 1163, 1177 (D.N.M. 2012). There is no dispute that Defendant Griffith was acting under color of state law. Thus, the Court's analysis focuses solely on the first prong: whether Defendant Griffith violated Plaintiff's substantive due process right to bodily integrity.

As this Court has previously noted, "it is well-settled that a teacher's physical mistreatment of a student offends the substantive protections afforded by the due process clause if the mistreatment rises to the 'high level of a brutal and inhuman abuse of official power literally shocking to the conscience." *N.F. v. Albuquerque Public Schools*, Civ. No. 14-00699, Doc. 68 at 4 (D.N.M. January 30, 2015) (quoting *Abeyta by and through Martinez v. Chama Valley Indep. Sch. Dist. No. 19*, 77 F.3d 1253, 1257-58 (10th Cir. 1996). "To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or employed it as an instrument of oppression." *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013). "The behavior complained of must be egregious and outrageous." *Id.*

Plaintiff contends that the Tenth Circuit previously determined in *Abeyta* that a teacher's sexual assault or molestation of a student is a violation of the due process clause. In *Abeyta*, the Tenth Circuit stated unequivocally that "[a] teacher's sexual molestation of a student is an intrusion of the student's bodily integrity" and that "sexual assault or molestation by a school teacher violates a student's substantive due process rights." 77 F.3d 1253, 1255 (10th Cir. 1996).

However, as this Court recognized in *N.F.*, this statement in *Abeyta* was dicta and did not clearly delineate the boundaries of what classifies as sexual assault or molestation. Of course, just because the language Plaintiff cites is non-binding does not mean it should be ignored. *Abeyta* does support the notion that sexual assault or molestation in the teacher/student context constitutes a violation of the student's substantive due process rights.

Further, a review of decisions from other federal courts demonstrates that *Abeyta* does not stand alone. The Fifth Circuit has stated that "[i]t is incontrovertible that bodily integrity is necessarily violated when a state actor sexually abuses a schoolchild and that such misconduct deprives the child of rights vouchsafed by the Fourteenth Amendment." *Doe v. Taylor Independent School Dist.*, 15 F.3d 443, 451-52 (5th Cir. 1994). Similarly, multiple federal courts have concluded that sexual abuse by a school teacher constitutes a violation of the Fourteenth Amendment's Due Process clause. S*ee Doe v. Claiborne County*, 103 F.3d 495, 506 (6th Cir. 1996) ("the right to be free from sexual abuse at the hands of a public school teacher is clearly protected by the Due Process Clause of the Fourteenth Amendment."); *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 727 (3d Cir. 1989) ("[a] teacher's sexual molestation of student is an intrusion of the schoolchild's bodily integrity[.]"); *Doe v. Beaumont*, 8 F.Supp.2d 596, 605 (E.D. Tex. 1998) ("Students have a liberty interest in their personal safety and bodily integrity which is protected by the Due Process clause of the Fourteenth Amendment….[t]hose rights are violated by sexual assault or abuse by a school employee.").

These cases, like *Abeyta*, however, do not clearly delineate what level of touching constitutes sexual assault or molestation. As this Court discussed in *N.F.*, not all sexually motivated touching is necessarily conscience shocking. *N.F.*, Civ. No. 14-699, Doc. 68 at 9. In some cases the touching is so egregious that it obviously shocks the conscience. *See Doe v.*

13

*Beaumont*, 8 F.Supp.2d 596, 606 (E.D. Tex. 1998) ("Obviously, the rape of a student by a school employee qualifies as physical sexual abuse and as a violation of one's bodily integrity…[i]nappropriate fondling has also been found to constitute physical sexual abuse under § 1983"). In other cases, even sexually motivated touching has not been found unconstitutional. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716 (6th Cir. 1996) (school coach rubbing student on stomach while making a suggestive remark did not shock the conscience whereas placing his hands between the breasts of another student and fondling that student's buttocks did); *Gilliam v. USD No. 244 Sch. Dist.*, 397 F.Supp.2d 1282 (D.Kan. 2005) (teacher putting arm around student, leaning over her desk and touching her, approach[ing] her from behind, lean[ing] into her pressing his torso into her back, and whisper[ing] in her ear, 'you know you do make my heart sing' did not state a claim); *Sh.A. v. Tucumcari Public Schools*, No. 00-cv-00727 JP/DJS-ACE (D.N.M. October 17, 2001) (even if sexually motivated, teacher's act of inappropriately rubbing students backs and chests underneath their shirts and running his hand underneath their shorts from their knees up their thighs did not shock the conscience).

At least two factors convince the Court that the touching in this case falls on the side of cases that shock the conscience. First, this case involved the touching of Plaintiff's breast. As this Court has previously noted, "inappropriate touching [of] a student is much more likely to be actionable under the due process clause if it involves the touching of certain erogenous zones, such as the genitals, the breasts, or the buttocks . . .." *N.F.,* No. 14-00699, Doc. 68 at 11. Indeed, the judge who sentenced Defendant Griffith found his conduct to be "a terrible crime" that warranted a sentence of 18 months imprisonment. Doc. 21-3 at 5-6. Second, and more importantly, the Court need not determine whether the touching in this case rose to the level of criminal sexual contact because that is not in dispute. In other words, the Court need not assess

whether the touching at issue rose to the level of sexual assault or molestation because Defendant Griffith has admitted to felonious sexual contact with a minor by virtue of his intentionally touching of Plaintiff's breast for purposes of his sexual gratification.

In sum, in pleading guilty to criminal sexual contact of a minor, Defendant Griffith necessarily admitted to unlawfully and intentionally touching or applying force to a portion of Plaintiff's body designated by the statute as "intimate" and that he did so for his own sexual gratification. The New Mexico Supreme Court has indicated that "legislatively-protected interests under the [criminal sexual penetration of a minor] and [criminal sexual contact of a minor] statutes are aimed at protecting the bodily integrity and personal safety of children." *State v. Pierce*, 1990-NMSC-049, ¶ 15, 792 P.2d 408. In such a situation, no reasonable factfinder could determine that Defendant did not sexually molest Plaintiff. *See Claiborne*, 103 F.3d at 507 (stating that molestation of a student "is so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause."); *Stoneking*, 882 F.2d at 727 ("a teacher's sexual molestation of a student could not possibly be deemed an acceptable practice."). Accordingly, the Court concludes that, given the undisputed material facts, Plaintiff is entitled to judgment as a matter of law on her substantive due process claim against Defendant Griffith.

### C. Plaintiff's Equal Protection Claim

Plaintiff claims that Defendant Griffith's conduct constituted sexual harassment and thereby violated Plaintiff's equal protection rights. The Fourteenth Amendment provides that "no state shall…deny to any person within its jurisdiction the equal protection of the laws." "A denial of the equal protection of the laws under color of state law is actionable under 42 U.S.C. §

15

1983." *Rost ex rel. K.C. v. Steamboat Springs RE-2 School Dist.*, 511 F.3d 1114, 1124 (10th Cir. 2008). Sexual harassment is a form of actionable sex discrimination under the equal protection clause. *Huffman v. City of Prairie Village, Kan.*, 980 F.Supp. 1192, 1205 (D. Kan. 1997). Thus, "it is well established in [the Tenth Circuit] that sexual harassment by a state actor can constitute a violation of the equal protection clause." *Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238 (10th Cir. 1999); *see also Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989).

Defendant Griffith argues that the Tenth Circuit has incorporated Title VII's standards in determining whether conduct under § 1983 constitutes sexual harassment. Doc. 37 at 14. Defendant therefore argues that Plaintiff must establish that the alleged harassment was severe and pervasive. While Defendant acknowledges that a single instance of sexual assault may be sufficient to state a claim for an equal protection violation, he asserts that the underlying facts in this case fail to establish severe or pervasive harassment as a matter of law. Doc. 37 at 15-16.

Based on the Court's review of the relevant law, the Court disagrees with Defendant Griffith's contention regarding the relevant standard to be applied in the present case. Under a Title VII hostile work environment claim, the plaintiff must show that the alleged conduct "affects a term, condition, or privilege" of employment. *Huffman v. City of Prairie Village, Kan.*, 980 F.Supp. 1192, 1200 (D.Kan. 1997). "To satisfy this requirement, [the] plaintiff must show that the sexual harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* However, a different standard applies in Section 1983 cases. "Under § 1983, the ultimate inquiry is whether the sexual harassment constitutes intentional discrimination as opposed to Title VII's inquiry into whether the harassment altered the conditions of the victim's employment." *Id.* at 1205; *see also Wood v. City of Topeka, Kan.*, 90 F.Supp.2d 1173, 1188 (D.Kan. 2000) ("courts have distinguished sexual

harassment claims under Title VII and § 1983. [Title VII] focuses on whether the discrimination was severe and pervasive enough to alter the terms and conditions of employment. Section 1983 claims focus on whether the discrimination was intentional."). Thus, the relevant inquiries in sexual harassment cases under the equal protection clause are whether the conduct constituted intentional discrimination. *See Sauers v. Salt Lake County*, 1 F.3d 1122 (10th Cir. 1993) ("A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent[.]").

In the context of determining whether a state actor intentionally discriminated against the plaintiff by means of sexual harassment, the Court understands that the plaintiff must show that the state actor abused his or her authority "for the purpose of [his or her own] sexual gratification." *Sh.A. ex rel. J.A. v. Tucumcari Mun. Schs.*, 321 F.3d 1285, 1289 (10th Cir. 2003) (stating that a teacher's abuse of his authority "for the purpose of [his] own sexual gratification' violated the equal protection clause); *see also Johnson v. Martin*, 195 F.3d 1208, 1218 (10th Cir. 1999) ("a public official's reasonable application of the prevailing law would lead him to conclude that to abuse any one of a number of kinds of authority for purpose of one's own sexual gratification…would violate the Equal Protection Clause."). It is undisputed in this case that Defendant Griffith pled guilty to touching Plaintiff's breast for his own sexual gratification. Further, the Court has found that this touching was so severe that it meets the "shocks the conscience" standard. Under *Tucumcari Mun. Schs.* and *Johnson*, the Court must find that Defendant Griffith violated Plaintiff's rights under the equal protection clause. Accordingly, the Court will likewise grant Plaintiff's Motion in regard to Count II of her amended complaint.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment on Her First Amended Complaint Which Alleges Violations of Her Fourteenth Amendment Rights by Defendant Benjamin Griffith is GRANTED.

It is furthermore ORDERED that Plaintiff shall either file an official transcript or the actual audio recording of Defendant Griffith's plea with the Court within two weeks from the entry of this Opinion. If a discrepancy exists between the Court's decision and the actual recording or transcript of Defendant Griffith's plea hearing, Defendant Griffith may file a motion to reconsider within two weeks after receiving such record.

**IT IS SO ORDERED.**

_____
UNITED STATES MAGISTRATE JUDGE
Sitting by Consent